## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CALLIE WHITE, on behalf
of herself and on behalf
of all others
similarly situated,

    Plaintiff,

v.    CASE NO.:

COMMUNITY HEALTH
SYSTEMS, INC.,
VENICE HMA, LLC,
d/b/a SHOREPOINT
HEALTH VENICE,

    Defendants.
_____/

### CLASS ACTION COMPLAINT
### (JURY TRIAL DEMANDED)

Named Plaintiff, Callie White ("Plaintiff"), on behalf of herself and on behalf of all others similarly situated (collectively "Plaintiffs"), files this Class Action Complaint against Defendants, Community Health Systems, Inc. and Venice HMA, LLC d/b/a ShorePoint Health Venice ("Defendants") for violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act").

In sum, Defendants violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act") by terminating the Named Plaintiffs and the putative class members without providing sufficient

advance written notice as required by the WARN Act. In this case, WARN Act liability is imputed to both Defendants via a "single employer" test/theory. In further support thereof, the Named Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. This is a class action for the recovery by the Named Plaintiff, on her own behalf and on behalf of approximately 600 other similarly situated former employees (collectively the "Class", as defined below), seeking to recover damages in the amount of 60 days' compensation and benefits for each of them by reason of the Defendants' violation of their rights under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq*. (the "WARN Act").

2. Defendants operated as a "single employer" for purposes of the WARN Act at all material times hereto, including with respect to the coordinated decision to terminate the Named Plaintiffs and putative class members by engaging in a mass layoffs and/or plant closure.

3. Defendants' mass layoffs deprived Named Plaintiffs and the Putative Class Members "…and their families [of] some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a).

4. Defendants failed to provide Named Plaintiffs and the Putative Class Members with the sixty (60) days advance written notice that is required by the WARN Act.

5. The Named Plaintiff and the Putative Class Members were employees of Defendants who were terminated without cause on their part on or about August 29, 2022, as part of or as the reasonably expected consequence of a mass layoff or plant closing, which was effectuated by Defendants on or about that date.

6. Defendants failed to give Plaintiff and the Putative Class Members at least 60 days' advance notice of their termination. As a consequence, Plaintiffs are entitled under the WARN Act to recover from the Defendants their respective compensation and benefits for 60 days.

7. Defendants will likely claim exemption from this requirement under the "unforeseeable business circumstance" exception of the WARN Act.

8. Under that exception, "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A).

9. However, Defendants were still mandated by the WARN Act to give the Named Plaintiff and the Putative Class Members "give as much notice as is practicable." They failed to do so here, giving Named Plaintiff and the Putative Class Members only seven day0's (or less) notice.

10. Indeed, the crucial date under the WARN Act is not the date when the company knows that a mass layoff is imminent, nor is it the date when the company finally gets around to identifying the exact employees affected by the mass layoff.

Rather, the WARN Act states plainly that the trigger date is the date when a mass layoff is "reasonably foreseeable."

11. As soon as it is probable that a mass layoff will occur, the employer must provide notice as soon as is practicable. Here, upon information and belief, Defendants likely knew near the end of April of 2022, or sooner, that a mass layoff was "reasonably foreseeable." Simply put, ShorePoint Health Venice was failing to sufficiently compete with Sarasota Memorial, a local hospital built just a few miles away.

12. Indeed, as reported in a comprehensive news story written by Sarasota *Herald-Tribune* reporter Earle Kimel on August 22, 2022 ("the *Herald-Tribune* article"), even "Jon Preiksat, the former Chief Legal Officer at Venice Memorial Hospital when it was sold to Bon Secours Health Care Systems, was not surprised that the current owner is closing the facility."[1]

13. According to the the *Herald-Tribune* article, " [t]he handwriting was always on the wall but it was never really visible,' Preiksat said. 'When Sarasota Memorial began building its new facility on Laurel Road, it became evident that it's' going to be a tough row to hoe for Venice hospital.' Preiksat also referenced Sarasota Memorial's recent decision to open a hospital in North Port and the second-quarter earning report for Community Health Systems Inc. as other likely factors to influence the decision to close the Venice campus." (*Id.*)

---

[1] https://www.heraldtribune.com/story/news/healthcare/2022/08/22/community-health-systems-inc-close-shorepoint-health-venice-hospital-emergency-department/7864731001/, last access August 29, 2022.

14. In fact, Defendant CHS "reported a 3.5% decrease in admissions for sale-site hospital admissions companywide, for April-June, 2002, compared to 2021. 'Meanwhile the parent company's net operating revenue for that period was $2.9 billion, which was a 2.4% decrease compared to the $3 billion in 2021.'" (*Id.*)

15. More significantly, Defendant "CHS posted an adjusted Earnings Before Interest, Taxes, Depreciation, and Amortization for that quarter of $253 million compared to $453 million for the same timeframe in 2021. COVID-19 pandemic relief funds accounted for $8 million of the EBITDA in 2022 and about $1 million in 2022." (*Id.*)

16. "'What kept them afloat – I hate to say it – was COVID and the additional payments made by the federal government to keep all hospitals open during COVID,' Preiksat said." (*Id.*)

17. The Mayor of Venice also was quoted as saying he was not surprised by the closure. According to the Herald Tribune story, "Venice Mayor Ron Feinsod said the announcement was not a shock to him, since officials at the hospital, which was known as Venice Regional Bayfront Health until a November 2021 rebranding, had talked to him about tearing down the existing campus and replacing it with a smaller one." (*Id.*) "'I knew that they were trying to find a way to remain on the island but I'm not surprised they couldn't find a way,' Feinsod said. 'It's unfortunate but I think it was somewhat inevitable.'" (*Id.*)

18. Thus, the closure of ShorePoint Health Venice was not only foreseeable by Defendants in April of 2022 (or sooner), it was "foreseen."

## JURISDICTION

19. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

20. The violation of the WARN Act alleged herein occurred in this District.

21. Venue in this Court is proper pursuant to 29 U.S.C. § 2104(a)(5).

## THE PARTIES

22. Defendant Community Health Systems, Inc. ("Defendant CHS") is a Tennessee-based publicly-traded corporation authorized to conduct business in the State of Florida.

23. According to its website, Defendant CHS is (or recently was) "the largest provider of general hospital healthcare services in the United States in terms of number of acute care facilities." https://www.chs.net/company-overview/, last accessed August 29, 2022.

24. Defendant Venice HMA, LLC, is a Florida-based limited liability corporation that operates ShorePoint Health Venice, a hospital located at 540 The Rialto, Venice, Florida 34285 (the "Facility").

25. Defendant CHS bought ShorePoint Health Venice hospital in 2014 as part of its $7.6 billion deal to purchase Florida-based Health Management Associates, which briefly made CHS the largest hospital operator in the nation.[2]

---

[2] https://www.bizjournals.com/nashville/news/2022/08/23/community-health-systems-to-close-florida-hospital.html, last accessed August 29, 2022.

6

26. Thus, on information and belief, at all relevant times, Defendants maintained an office or facility at the "Facility".

27. As of August of 2022, Defendants employed 350 affiliated physicians and 1,200 employees at the Facility.

28. Prior to her termination, the Named Plaintiff was an employee of Defendants.

29. On August 29, 2022, the Named Plaintiff was terminated from her employment, without cause on her part, by the Defendants.

30. On August 29, 2022, and thereafter, the Named Plaintiff and approximately 600 other employees of the Defendants were terminated without cause on their part as part of or as the reasonably expected consequence of the terminations that occurred on or about August 29, 2022 (collectively, the "Class").

31. Defendants' purported commitment to keep the Named Plaintiff and the Putative Class Members "employed," on paper at least, by not officially terminating them until November 22, 2022, changes nothing because the Named Plaintiff and the Putative Class Members were told to no longer show up for work and they are no longer being paid by Defendants.

32. The same is true as for Defendants' purported commitment to continuing the Named Plaintiff's and Putative Class Member's existing health and welfare insurance benefits for 90 days. Namely, because the Named Plaintiff and the Putative Class Members were told to no longer show up for work and they are no longer being paid. Not only that, Plaintiff and the Putative Class Members

7

remain responsible for paying their own premiums, including through Defendants' decision to utilize the Named Plaintiff's and Putative Class Member's earned/accrued Paid-Time-Off pay/compensation to cover the pre-tax health and welfare benefits.

33. The Named Plaintiff brings this action on her own behalf and, pursuant to rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and the Putative Class Members.

## THE MASS LAYOFF / PLANT CLOSURE

34. On August 22, 2022, the Named Plaintiff—who worked for Defendants in Radiology at ShorePoint Health Venice—and the Putative Class Members learned for the first time that Defendants were closing ShorePoint Health Venice.

35. All elective and outpatient procedures were cancelled at the end of the day on August 26, 2022.

36. No severance was offered to the Named Plaintiff and Putative Class Members.

37. As of August 29, 2022, the Named Plaintiff and the Putative Class Members were no longer permitted to physically work at the Facility, nor were they being paid their salaries or wages any longer. Thus, they suffered an "employment loss" as defined by the WARN Act effective August 29, 2022.

38. According to a written statement from Defendant's CEO emailed to the Named Plaintiff and the Putative Class Members on August 22, 2022, "this

decision was made, in large measure, due to recent healthcare services changes in our area, especially with the opening of a new, very large hospital five miles away- a move we opposed because state health planning data showed there was not a need for more inpatient beds in our area. While demand for outpatient and specialty care remains strong, we've seen a significant decline in the number of patients seeking inpatient care at the hospital."

39. Defendant's CEO went on to explain that, "Additionally, rising labor costs and staffing challenges for all healthcare organizations following the COVID-19 pandemic, inflationary pressure, and other dynamics make it difficult to operate successfully in today's environment. These and other factors are why we have made the difficult but necessary decision to close the hospital and focus on outpatient services where patient demand continues to grow in Venice and the surrounding areas, and across the healthcare industry in general."

40. None of this excuses Defendants from failing to comply with the WARN Act's 60-day notice requirement as to the Named Plaintiff and the Putative Class Members.

41. As explained above, the closure of ShorePoint Health Venice was entirely foreseeable by Defendants in April of 2022, or sooner, leaving Defendants without a viable legal reason as to why they deprived the Named Plaintiff and Putative Class Members of their right to receive a compliant WARN Act notice at least sixty days in advance of their termination.

42. In fact, the only written notice received by the Named Plaintiff and the Putative Class Members fails to comply with the WARN Act's notice requirements.

43. At a minimum, WARN Act notices must contain: (i) the name and address of the employment site where the plant closing or mass layoff will occur, and the name and telephone number of a company official to contact for further information; (ii) a statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect; (iii) the expected date of the first separation and the anticipated schedule for making separations; and (iv) the job titles of positions to be affected and the names of the workers currently holding affected jobs.

44. The August 22, 2022, written notice the Named Plaintiff received contained none of the above.

## THE CLAIM FOR RELIEF

45. At all relevant times, the Defendants employed 100 or more employees, exclusive of part-time employees, i.e., those employees who had worked fewer than 6 of the 12 months prior to the date notice was required to be given or who had worked fewer than an average of 20 hours per week during the 90 day period prior to the date notice was required to be given (the "Part-Time Employees"), or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

46. The terminations on or about August 29, 2022, of the employment of persons who worked at the Facility for Defendants resulted in the loss of employment for approximately 600 employees excluding Part-Time Employees.

47. The terminations on or about August 29, 2022, of the employment of persons who worked at the Facility or as the reasonably foreseeable consequence of those terminations resulted in the loss of employment for at least 33% of the Facility's employees excluding Part-Time Employees.

48. The Named Plaintiff and the Putative Class Members were discharged without cause on their part on or about August 29, 2022, or thereafter as the reasonably expected consequence of the terminations that occurred on or about August 29, 2022.

49. The Named Plaintiff and each of the other Putative Class Members experienced an employment loss as part of or as the reasonably expected consequence of the mass layoff and/or plant closing that occurred on or about August 29, 2022.

50. Prior to the terminations, the Plaintiff and the Putative Class Members did **not** receive written notice at least 60 days in advance of the termination of their employment.

## CLASS ACTION ALLEGATIONS

51. The Plaintiff and the Putative Class Members constitute a Class within the meaning of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

52. Specifically, the Named Plaintiff seeks to certify the following class:

11

**WARN Act Class:**
All former of Defendants' employees, who worked at ShorePoint Health Venice, who were not given a minimum of 60 days' written notice of termination and whose employment was terminated on or about August 29, 2022, as a result of a "mass layoff" or "plant closing" as defined by the Workers Adjustment and Retraining Notification Act of 1988.

53. Each of the Putative Class Members is similarly situated to the Plaintiff with respect to his or her rights under the WARN Act.

54. Common questions of law and fact are applicable to all members of the Class.

55. The common questions of law and fact arise from and concern the following facts, among others: that all Putative Class Members enjoyed the protection of the WARN Act; that all Putative Class Members were employees of the Defendants who worked at the Facility; that the Defendants terminated the employment of all the members of the Class without cause on their part; that the Defendants terminated the employment of Putative Class Members without giving them at least 60 days' prior written notice as required by the WARN Act; that the Defendants failed to pay the Putative Class Members wages and to provide other employee benefits for a 60-day period following their respective terminations; and on information and belief, the issues raised by an affirmative defenses that may be asserted by the Defendants.

56. The Named Plaintiff's claims are typical of the claims of the other members of the Class in that for each of the several acts of Defendants described

above, the Plaintiff and the other Putative Class Members is an injured party with respect to his/her rights under the WARN Act.

57. The Named Plaintiff will fairly and adequately protect and represent the interests of the Class.

58. The Named Plaintiff has the time and resources to prosecute this action.

59. The Named Plaintiff has retained the undersigned counsel who have had extensive experience litigating WARN Act claims, employee rights' claims, and other claims in Federal court.

60. The Class is so numerous as to render joinder of all members impracticable in that there are approximately 600 members of the Class.

61. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

62. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

63. No Putative Class Member has an interest in individually controlling the prosecution of a separate action under the WARN Act.

64. No litigation concerning the WARN Act rights of any Class member has been commenced.

65. Concentrating all the potential litigation concerning the WARN Act rights of the Putative Class Members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the parties, and is the most

efficient means of resolving the WARN Act rights of all the Putative Class Members.

66. On information and belief, the names of all the Putative Class Members are contained in Defendants' books and records.

67. On information and belief, a recent residence address of each of the Putative Class Members is contained in Defendants' books and records.

68. On information and belief, the rate of pay and the benefits that were being paid or provided by Defendants to each Class member at the time of his or her termination are contained in Defendants' books and records.

69. As a result of Defendants' violation of the WARN Act, each Putative Class Members is entitled to recover an amount equal to the sum of: (a) his/her respective wages, salaries, commissions, bonuses and accrued pay for vacation and personal days for the work days in the 60 calendar days prior to their respective terminations and fringe benefits for 60 calendar days prior to their respective terminations; and (b) his/her medical expenses incurred during the 60-day period following their respective terminations that would have been covered and paid under the Defendants' health insurance plan had that plan provided coverage for such period.

70. Defendants failed to pay the Plaintiff and the other Putative Class Members for the Defendants' violation of the WARN Act in an amount equal to the sum of or any part of the sum of (a) their respective wages, salary, commissions, bonuses and accrued pay for vacation and personal days for the work days in the

60 calendar days prior to their respective terminations and fringe benefits for 60 calendar days prior to their respective terminations; and (b) their medical expenses incurred during the 60 calendar days from and after the date of his/her termination that would have been covered under the Defendants' benefit plans had those plans remained in effect.

71. The Named Plaintiff hereby demands a jury trial of all issues that may be so tried.

**WHEREFORE**, the Named Plaintiff demands judgment as follows:

A. In favor of the Named Plaintiff and each Putative Class Members against the Defendants equal to the sum of: (a) wages, salary, commissions, bonuses, accrued pay for vacation and personal days, for 60 days; (b) pension, 401(k) contributions, health and medical insurance and other fringe benefits for 60 days; and (c) medical expenses incurred during the 60 day period following their respective terminations that would have been covered and paid under the Defendants' health insurance plans had coverage under that plan continued for such period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104 (a)(1)(A).

B. Appointment of the Named Plaintiff as Class Representative;

C. Appointment of the undersigned as Class Counsel;

D. In favor of the Named Plaintiff for the reasonable attorneys' fees and the costs and disbursements of prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104 (a)(6).

E.      Interest allowed by law;

F.      Such other and further relief as this Court deems just and proper.

Dated this 29th day of August, 2022.

                                     Respectfully submitted,

                                     /s/Brandon J. Hill
                                   **BRANDON J. HILL**
                                   Florida Bar Number: 0037061
                                   **LUIS A. CABASSA**
                                   Florida Bar Number: 0053643
                                   **AMANDA E. HEYSTEK**
                                   Florida Bar Number: 0285020
                                   **WENZEL FENTON CABASSA, P.A.**
                                   1110 North Florida Avenue, Suite 300
                                   Tampa, FL 33602
                                   Main No.: 813-224-0431
                                   Direct No.: 813-379-2565
                                   Facsimile: 813-229-8712
                                   Email: bhill @wfclaw.com
                                   Email: lcabassa@wfclaw.com
                                   Email: aheystek@wfclaw.com
                                   Email: gnichols@wfclaw.com