## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CALLIE WHITE, *et al.*,

     Plaintiffs,

v.                            Case No: 8:22-cv-1989-CEH-AEP

VENICE HMA, LLC and VENICE
HMA HOLDINGS, LLC,

     Defendants.

_____

## <u>ORDER</u>

This cause comes before the Court on Defendants', Venice HMA Holdings, LLC, and Venice HMA, LLC, Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 27), which Plaintiffs Callie White, *et al.*, oppose (Doc. 33).  In this putative class action, Plaintiffs allege that Defendants violated the Worker Adjustment and Retraining Notification ("WARN") Act when they closed ShorePoint Venice Hospital without the required advance notice. Doc. 23.  Defendants now request dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), because they contend that the Amended Complaint does not adequately allege that the Plaintiffs have suffered an "employment loss" as defined by the WARN Act. Doc. 27.

Upon review and consideration, and being fully advised in the premises, the Court will deny the motion.

## I.    <u>Background</u>

On August 29, 2022, the named Plaintiffs filed suit against Venice HMA, LLC, d/b/a ShorePoint Health Venice, and Venice HMA Holdings, LLC ("Defendants"), alleging that Defendants violated the WARN Act,  29 U.S.C. § 2101-09. Docs. 1, 23. Each of the named Plaintiffs is a former employee of ShorePoint Health Venice Hospital ("the hospital"), with varying degrees of experience and seniority. Doc. 23 ¶¶ 68, 77, 87, 93, 99, 104.  Defendants have common ownership over the hospital. *Id.* ¶¶ 21-26.

On August 22, 2022, Defendants' CEO sent a mass email to employees informing them that the hospital would be closing as of September 22, 2022. *Id.* ¶ 38. The CEO's email stated, "Retaining our valued team members is our top priority during this transition.  There are sufficient job openings across ShorePoint Health for the majority of our staff." Doc. 23-1 at 2.  The email went on to announce that Defendants would host job fairs in the coming days, at which hospital employees could apply for positions at Defendants' other facilities. *Id.*; Doc. 23 ¶ 55.  When employees applied for such a position, their application stated that requesting a transfer "does not guarantee you will be interviewed for the opening." *Id.* ¶ 53.  Some of the named Plaintiffs did not receive any transfer offers. *Id.* ¶ 54.  Other named Plaintiffs did receive transfer offers, but the offered positions had less seniority, a lower salary, and fewer benefits. *Id.* ¶ 56.  No transfer offers were made until after the named Plaintiffs

and putative class members' employment was terminated and the hospital closed. *Id.* ¶ 50.

In all, Plaintiffs allege that the named Plaintiffs and approximately 600 employees lost their jobs as a result of the hospital closure. *Id.* ¶¶ 46-47.  They further allege that they experienced an "employment loss," as defined by the WARN Act, by the time the hospital closed on September 22, 2022. *Id.* ¶¶ 48, 51-52 ("The Named Plaintiffs and Putative Class Members were each <u>terminated</u> by Defendants on or about August 25, 2022, or thirty days thereafter. This was not a temporary "layoff" for less than six months as the above facts and Exhibit A indicate.") (emphasis in original). They allege that Defendants failed to provide adequate notice of the hospital's closure, in violation of the WARN Act. *Id.* ¶¶ 41, 43.

Defendants now move to dismiss this action under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim upon which relief may be granted. Doc. 27 at 1.  Defendants argue that Plaintiffs failed to sufficiently allege that they experienced an "employment loss" as required under the WARN Act. *Id.* at 3, 5, 10-11.  They first contend that any layoff has not yet lasted six months, rendering the Plaintiffs' claim premature. *Id.* at 6-8. Moreover, the CEO's email clearly communicated an intent to continue their employment rather than provide notice of an employment loss, and any actual loss in employment has been temporary. *Id.* at 10-11.  As a result of these pleading inadequacies, Defendants argue that Plaintiffs lack standing and have failed to state a claim. *Id.* at 12-14.

Plaintiffs oppose the motion to dismiss, maintaining that the named Plaintiffs suffered an employment loss as defined by the WARN Act. Doc. 33 at 2, 9-19.  They argue that the hospital was permanently closed for more than two months by the time of Plaintiffs' response, which constitutes a "plant closing" that does not necessitate a delay of six months. *Id.* at 3-4, 11-14.  Moreover, inviting employees to apply for new employment is not the same as a transfer offer, particularly where there was no guarantee of receiving an offer and Defendants did not represent that all current employees would be able to remain. *Id.* at 14-16.  In any event, Plaintiffs contend that the WARN Act requires that valid transfer offers be made *prior* to the closure, which did not occur. *Id.*

## II.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009), quoting Fed. R. Civ. P. 8(a)(2).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Mere naked assertions are also insufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation

omitted).  The Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id.*  Overall, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

Attacks on subject matter jurisdiction under Rule 12(b)(1) may be facial or factual.  A facial attack on subject matter jurisdiction "requires [] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citations omitted).  A factual attack, on the other hand, permits the court to consider matters outside of the pleadings. *See Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997).  Standing to bring a lawsuit is a component of a federal court's subject matter jurisdiction. *See Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013).  The plaintiff bears the burden of proving standing, which requires a three-part showing that: (1) the plaintiff suffered or will imminently suffer an injury-in-fact; (2) a causal connection exists between this injury and the defendant's conduct; and (3) the plaintiff's injury is likely to be redressed by a favorable decision. *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010) (overruled on other grounds by *Janus v. American Federation of State, Cnty., and Mun. Employees, Council 31*, 138 S.Ct. 2448 (2018)).

III.   **Discussion**

The WARN Act requires employers to provide 60 calendar days' notice to affected employees of a plant closing or mass layoff. 21 U.S.C. § 2102(a); *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1281 (11th Cir. 2013). If the employer fails to provide the requisite notice, the employees are entitled to 60 days' pay and benefits. 29 U.S.C. § 2104(a)(1).

The WARN Act defines a "plant closing" as:

> [T]he permanent or temporary shutdown of a single site of employment…if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employee[.]

29 U.S.C. § 2101(a)(2).  A "mass layoff" is a reduction in force that is not the result of a plant closing, and that results in an employment loss at the single site of employment during a 30-day period for a certain number and/or percentage of employees. *Id.* § 2101(a)(3).

An "employment loss" is defined as: "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period." *Id.* § 2101(a)(6)  An employment loss does not occur if: "the closing or layoff is the result of the relocation or consolidation of part or all of the employer's business and, prior to the closing or layoff[, ] the employer offers to transfer the employee to a different site of employment[.]" *Id.* 2101(b)(2).

At issue is whether Plaintiffs have adequately alleged that they experienced an "employment loss."  Defendants contend that Plaintiffs' claims are not ripe because the Amended Complaint "alleges only the possibility that the named Plaintiffs *may* experience an employment loss, in the form of termination or layoff exceeding six months, *at some future date if certain conditions, which have not yet occurred, happen.*" Doc. 27 at 2 (emphasis in original).  In support, Defendants cite some of the named Plaintiffs' allegations that they received a transfer offer. *Id.* at 8.  They contend that Plaintiffs "have already either received transfer offers or are involved in continuing discussions about continuing their employment at another facility." *Id.* at 8. Defendants argue that the CEO's email "indicate[d] a commitment to maintain the employment of affected employees." *Id.* at 10.  At this point, they conclude, Plaintiffs have faced, at most, a temporary layoff rather than a termination. *Id.* at 11.

Contrary to Defendants' arguments, however, Plaintiffs' allegations of an employment loss are adequate for this stage of the action.  First, Defendants' reliance on the fact that some Plaintiffs received transfer offers is unavailing to establish the transfer offer exception to an employment loss under the WARN Act.  Plaintiffs allege that "any transfer offers made by Defendants were not made until after the Named Plaintiffs had already lost their jobs." Doc. 23 ¶ 50.[1]  Plaintiffs further allege that Defendants "violated the WARN Act...by failing to make transfer offers ***prior*** to

---

[1] *See also id.* ¶¶ 71, 80, 90, 107  (alleging that "Defendants failed to make [named Plaintiffs] an offer to transfer to another facility until *after* she had already lost her job.") (emphasis in original).

closing the plant." *Id.* (emphasis in original).  Setting aside the questions Plaintiffs raise regarding the validity of the transfer offers—such as the fact that a transfer was not guaranteed and often did not entail a comparable position,[2] Doc. 33 at 5, 14—the statute requires that a transfer offer be made "prior to the closing or layoff." 29 U.S.C. § 2101(b)(2).  Plaintiffs' allegation that no transfers were made until after the hospital's closing renders the transfer exception to an employment loss inapplicable.

Defendants also appear to argue that the CEO's email itself constitutes a transfer offer. *See* Doc. 27 at 10 ("While this statement may be fairly read as offering a transfer for Plaintiff and other affected employees…").  The Court disagrees.  The CEO stated, "[t]here are sufficient job openings across ShorePoint Health for the *majority of our staff*." Doc. 23-1 at 2 (emphasis added).  This limited language stands in contrast to Defendants' claim that they had a "clear intent to continue the employment of *all* affected employees via transfer assignments." Doc. 27 at 10 (emphasis added). Further, the document that accompanied the CEO's email, titled "Important Things to Know During the Transition," makes clear that employees must apply and interview to be considered for a transfer position, just as Plaintiffs allege.  The Court therefore rejects Defendants' claim that the CEO's email itself constitutes a transfer offer.

---

[2] *See*, *e.g.*, *Johnson v. TeleSpectrum Worldwide, Inc.*, 61 F.Supp.2d 116, 126 (D.Del. 1999) (a transfer offer must be "bona fide" and "the employees must be guaranteed further employment" to fall within the transfer offer exception); *Int'l All. Of Theatrical and Stage Emps. and Moving Picture Mach. Operators, AFL-CIO v. Compact Video Servs., Inc.*, 50 F.3d 1464, 1468-69 (9th Cir. 1995) (employees whose pay and benefits were cut did not suffer an employment loss under the WARN Act).

However, to the extent Defendant asserts that its stated intent to transfer employees turns the alleged termination into a temporary layoff, this argument merits further analysis.   After all, under the WARN Act, a termination "results in an immediate employment loss," while "there is no employment loss until [a] layoff continues for more than six months." *Auto Mechanics' Loc. No. 701 of Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Santa Fe Terminal Servcs., Inc.*, 830 F.Supp. 432, 434 (N.D. Ill. 1993); *see also Allen v. Sybase, Inc.*, 468 F.3d 642, 654 (10th Cir. 2006) (citing *Santa Fe*).

The Department of Labor defines a termination as "the permanent cessation of the employment relationship." *Morton v. Vanderbilt Univ.*, 809 F.3d 294, 296 (6th Cir. 2016), citing 54 Fed. Reg. 16042-01 (April 20, 1989).[3]   But it is not always clear whether a cessation is permanent or temporary.   The Seventh Circuit has applied an objective standard to this question that is based upon the employee's dismissal notice, holding that:

> [I]f an objective observer would conclude that an employee suffered a permanent cessation of his employment relationship, a § 2101(a)(6)(A) "employment termination" occurred.  The employer's subsequent decision to offer the employee his old job cannot retroactively transform that once-permanent firing into a temporary layoff.

---

[3] Courts have found that employees were not terminated if they continued receiving pay, even if they were no longer working. *See, e.g.*, *Morton v. Vanderbilt Univ.*, 809 F.3d 294, 296-97 (6th Cir. 2016); *Long v. Dunlop Sports Grp. Americas, Inc.*, 506 F.3d 299, 302 (4th Cir. 2007). Employees who did not experience a break in employment before being placed in a new position were also not terminated for WARN Act purposes. *See, e.g.*, *Kephart v. Data Sys. Int'l, Inc.*, 243 F. Supp. 2d 1205, 1224 (D. Kan. 2003) (collecting cases); *Martin v. AMR Servs. Corp.*, 877 F. Supp. 108, 114-15 (E.D.N.Y.), *aff'd sub nom. Gonzalez v. AMR Servs. Corp.*, 68 F.3d 1529 (2d Cir. 1995).

*Leeper v. Hamilton Cnty. Coal, LLC ("Leeper II")*, 939 F.3d 866, 871 (7th Cir. 2019). The court rejected a hindsight-based approach, noting that requiring plaintiffs to wait six months to see if they were re-hired would effectively eliminate the WARN Act's alternative provision regarding termination. *Id.* at 869-70. Instead, the court held that an up-front determination of whether a dismissal was a termination or temporary layoff was most consistent with the statute. *Id.* at 870. In that case, the court found that the undisputed evidence from the time of the dismissal showed it was only a temporary cessation of employment. *Id.* at 871. As a result, the employer was entitled to summary judgment. *Id.*

Determining whether a cessation of employment is permanent or temporary is necessarily a fact-intensive question. As a result, where there is evidence supporting either interpretation, courts have found that it is a question best left for the fact-finder. *See Gautier v. Tams Mgmt., Inc.*, No. 5:20-CV-00165, 2022 WL 3162177, *6 (S.D.W. Va. Aug. 8, 2022) (denying cross-motions for summary judgment and finding that whether a dismissal was a termination or temporary layoff was a question for the fact-finder); *Kephart v. Data Sys. Int'l, Inc.*, 243 F. Supp. 2d 1205, 1225 (D. Kan. 2003) (where court could not conclude as a matter of law that employees' dismissal was temporary, finding that genuine issues of material fact existed as to whether an employment loss occurred). Similarly, many courts have declined to make this determination at the motion to dismiss stage. In *Leeper v. All. Res. Partners, L.P. ("Leeper I")*, No. 16-CV-250-NJR-DGW, 2017 WL 4340294, *3-5 (S.D. Ill. Sept. 29, 2017), for

example, the court denied a motion to dismiss where defendants presented evidence that half of the employees were offered re-employment within six months, and the dismissals were characterized as "temporary layoffs"; on the other hand, plaintiffs alleged they were terminated, that all pay and benefits ceased immediately, and that they had to re-apply and interview in order to be re-hired.  The court found that the complaint did not "present[] legally dispositive facts that directly undermine Leeper's characterization of the Temporary Layoff Notice as a termination," concluding instead that "Defendants' fact-intensive arguments are more appropriate for summary judgment." *Id.* at *5; *see also Johnson v. Am.*, No. 15-CV-03104-MEJ, 2015 WL 8477667, *3 (N.D. Cal. Dec. 10, 2015) (finding that defendant's statute of limitations argument depended on whether the dismissals were terminations or temporary layoffs, which could not be resolved on the pleadings); *Santa Fe*, 830 F.Supp. at 434 ("Whether the action in dispute was a termination of jobs or a layoff cannot be resolved on the pleadings. … Resolution of this factual dispute would have to await summary judgment, a trial, or another appropriate proceeding.").

Here, Plaintiffs allege that they were terminated by the time the hospital closed, "on or about August 25, 2022, or within 30 days thereafter[.]" Doc. 23 ¶¶ 4, 51, 53, 56, 59, 63.  The named Plaintiffs allege that they were notified of their terminations on August 22, 25, or 26, with zero to four days' notice. *Id.* ¶¶ 69, 78, 88, 94, 100, 105. The pleadings do not contain any details about the contents of the dismissal notifications the named Plaintiffs received.  This absence means the Court cannot make any findings as to whether an "objective observer" would conclude their

employment relationships were being permanently, not temporarily, ended. *See Leeper II*, 939 F.3d at 871.

The record does contain the CEO's August 22 email, which notified employees that the hospital would close by September 22, 2022, and that there would be other positions available for "the majority" of employees, should their application be accepted. Doc. 23-1.  The parties dispute the email's significance, with Plaintiffs characterizing it as a termination notice and Defendants arguing that it communicates an intent of, at most, temporary layoffs.  But the email language could support either party's interpretation.  Moreover, it does not conclusively contradict Plaintiffs' allegations that they were terminated rather than temporarily laid off. *See Leeper I*, 2017 WL 4340294 at *5 (pleadings did not present legally dispositive facts that directly undermined claim of termination).   As in *Leeper I* and *Santa Fe*, then, the Court finds that this is a factual question that cannot be resolved on the pleadings, and is instead more appropriate for summary judgment or trial.  The Amended Complaint contains adequate allegations to plausibly allege that employees experienced an employment loss within the meaning of the WARN Act.[4]

Defendants' arguments regarding standing and the failure to state a claim rest exclusively on their contention that Plaintiffs' allegations do not establish that they

---

[4] Further, just like the *Leeper II* court, this Court rejects an interpretation of the WARN Act that requires all prospective plaintiffs to wait six months to see if they are re-hired before they can be considered to have experienced an employment loss. *See* 939 F.3d at 869-70.  For the reasons stated by the *Leeper II* court, which are consistent with the body of WARN Act caselaw, WARN Act plaintiffs may proceed immediately under a termination theory if their plausible allegations support it—as Plaintiffs' do here. *See* 29 U.S.C. § 2101(a)(6)(A).

experienced an employment loss.  Because the Court has found that Plaintiffs'
allegations regarding an employment loss are sufficient, Defendants' motion to dismiss
under both Rule 12(b)(1) and 12(b)(6) is due to be denied.

Accordingly, it is **ORDERED**:

1. Defendants Venice HMA Holdings, LLC, and Venice HMA, LLC's,
   Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 27) is
   **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on July 7, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

13