## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**INGRID TETREAULT,**
**DEBRA CATLETTE, and**
**CALLIE WHITE, on behalf of**
**themselves and on behalf of**
**all others similarly-situated,**

      **Plaintiffs,**

**v.**                        **CASE NO.: 8:22-cv-1989-CEH-AEP**

**VENICE HMA, LLC, d/b/a SHOREPOINT**
**HEALTH VENICE, and VENICE HMA**
**HOLDINGS, LLC,**

      **Defendants.**
_____/

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Fed. R. Civ. P. 23, named Plaintiffs, Ingrid Tetrault, Debra Catlette, and Callie White ("Named Plaintiffs" or "Plaintiffs"), file this Unopposed Motion with incorporated Memorandum of Law, seeking an Order: (1) preliminarily approving the settlement agreement (attached as Exhibit B) ("Settlement Agreement"); (2) preliminarily certifying a class for settlement purposes only; (3) approving the form and manner of notice to the class (attached as Exhibits C, D, and E); (4) scheduling a fairness hearing for the final consideration and approval of the parties' settlement; and, finally, (5) approving

the settlement in a subsequent Order. A proposed Order granting this Motion is attached as Exhibit A.

Defendants support the ultimate relief requested by Plaintiffs (together, the "Parties") in this Unopposed Motion and joins Plaintiffs in requesting that the Court approve the Order attached as Exhibit A.  In support of this Unopposed Motion, Plaintiffs respectfully submit the following:

## I.    <u>BACKGROUND AND OVERVIEW OF SETTLEMENT</u>.

If approved here, the settlement provides for immediate relief to approximately 435 members of the proposed settlement class ("Settlement Class Members" or "Class Members"). Defendant has agreed to create a common fund of $362,500 for the Class Members. Settlement Class Members will not be required to take any action to receive a check, making it a "claims paid" settlement. The gross payment is approximately $833.33 per Settlement Class Member, with a net amount of about $544.06 per Settlement Class Member,[1] an amount consistent with similar WARN Act class action settlements approved by federal courts, including here in the Middle District of Florida.[2] Not only that, no settlement funds will revert to Defendant.

---

[1] $362,500 − $120,833 (attorneys' fees) - $5,000.00 (WFC litigation costs) = $236,667 / 435 class members= $544.06 net payments to class members.

[2] *See, e.g.*, *Benson v. Enterprise Leasing Company of Orlando, LLC* case, M.D. Fla. Case No.: 6:20-cv-891 (Sept. 20, 2022, Doc. 149) (approving class action settlement where WARN Act class members received $734.58); *Molina v. Ace Homecare LLC*, No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), report and recommendation adopted, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July 17, 2019)(approving class action settlement in which WARN Act class members receive $500 net payments).

Subject to Court approval, attorneys' fees and costs will be paid from the fund. Defendant will effectuate notice and administration of the settlement such that no costs of notice and administration shall be deducted from the Gross Settlement.  If any money remains in the Settlement Fund after these distributions and after Settlement Class Members have had 60 days to cash their settlement checks, left over funds shall be paid as a *cy pres* donation to a non-profit 501(c)(3) charity, American Red Cross.

Plaintiffs' counsel, who have substantial experience representing class representatives and prosecuting class actions, including WARN Act cases like this, have investigated the law and facts relating to the claims asserted in the Complaint. Based on their experience in representing class representatives and litigating class action cases, Plaintiffs' counsel has concluded that this Settlement is fair and reasonable and in the best interests of the Settlement Class.  Plaintiffs' counsel has given due consideration to the benefits of amicably resolving this case as described herein and the risks and delays associated with further litigation.

In sum, the proposed settlement is fair and reasonable, and preliminary approval by the Court should be granted.

## A.    <u>The Claims and Case Background</u>.

The original complaint in this lawsuit was filed on August 29, 2022. Plaintiffs' Complaint alleged that Defendant violated the Worker Adjustment and Retraining Notification Act ("WARN Act") by terminating the Named Plaintiffs with no advance notice in violation of the WARN Act.  Defendant has, at all relevant

times, denied Plaintiffs' allegations and affirmatively asserted its compliance with the law.

Following the completion of: (i) an early arms-length in-person mediation before third party mediator, Marquis Heilig, during which both sides were represented by experienced class counsel, resulting in an impasse; (ii) briefing on a potentially dispositive Motion to Dismiss filed by the Defendant that was denied; (iii) extensive discovery during which over 2,000 pages of documents were exchanged and half a dozen depositions completed; (iv) and arms-length settlement negotiations over a period of seven months between both sides experienced class counsel, the Parties reached a resolution to this action.

### B.    **Defendant's Defenses**.

Had negotiations been unsuccessful, Defendants had available to them a myriad of defenses to Plaintiffs' allegations, including defenses to the merits of the case and defenses to damages. Defendants have raised various defenses in this action, including that the closing of ShorePoint Venice was part of a consolidation of employees and certain business lines with ShorePoint Punta Gorda and ShorePoint Port Charlotte, and that the putative class members received bona fide transfer offers prior to the closing of ShorePoint Vencie and thereafter in accordance with WARN.  Defendants further assert that the requisite number of employees did not suffer an "employment loss," as that term is defined under the WARN Act, such that Defendants were required to comply with the WARN Act's notice requirements.

As part of the Settlement Agreement, Defendants specifically deny that they engaged in any wrongdoing, do not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been alleged against them in the action, deny that the claims asserted by Named Plaintiffs are suitable for class treatment other than for settlement purposes, and deny that they have any liability whatsoever. However, Defendants agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to their business operations.

## II.     **THE PROPOSED SETTLEMENT.**

### A.     **The Proposed Settlement Class.**

The Settlement Agreement defines the proposed Settlement Class as follows: "All persons employed by Defendants who worked at ShorePoint Health Venice, who were laid off or terminated without cause on their part on or about August 29, 2022 or within 30 days of that date, as part of, or as the reasonably expected consequence of, a mass layoff and/or plant closure as defined by the WARN Act, who do not timely opt-out of the class, but excluding individuals who were PRN employees or were employed at the nearby ShorePoint Health Venice HealthPark." According to Defendants' records, the class is comprised of approximately 435 people.

### B.     **Benefits to the Settlement Class.**

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiffs and all Settlement Class Members in exchange for the Defendants' agreement to pay $362,500 to a settlement fund ("Settlement Fund"). Each Class Member is entitled to a gross pro-rata portion of the Settlement Fund totaling $833.33. After deducting the estimated attorneys' fees and litigation costs, each of the Settlement Class Members are entitled to receive a net payment of approximately $544.06. All Class Members will automatically receive a check without having to take any action whatsoever, making this a "claims paid" settlement. Importantly, no funds will revert to Defendant. Any remaining funds will be paid to *cy pres* recipient American Red Cross, subject to Court approval.

The Parties did not negotiate attorneys' fees until after all terms related to the size of the common Settlement Fund and the class definitions were agreed upon. Plaintiffs' counsel will file a separate fee petition with the Court addressing fees and costs. None of the Named Plaintiffs are seeking a service award. Neither settlement approval nor the size of the Settlement Fund are contingent upon the full amount of any requested fees being approved.

## C.    <u>Administration of Notice</u>.

Because Defendants are handling notice and administration, no costs of notice and administration shall be deducted from the Gross Settlement. In no event shall Defendants be liable for making any payments under this Settlement Agreement, or for providing any relief to the Settlement Class Members, before the

deadlines set forth in this Agreement expire, or in excess of the Gross Settlement Fund.

## III.   **PRELIMINARY CLASS CERTIFICATION.**

As part of preliminary approval of the settlement, the Parties respectfully seek certification of the Settlement Class solely for the purposes of settlement, as described here.

### A.   **The Settlement Meets the Requirements of Rule 23(e) for Approval.**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *Holman v. Student Loan Xpress. Inc.*, 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009).  "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class."  *Smith*, 2010 U.S. Dist. LEXIS, at *5-6. "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518, at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4)

the proposal treats class members equitably relative to each other. This standard is satisfied here, and the Court should enter an order preliminarily approving the Class Action Settlement Agreement.

### 1. The Class Representative and Class Counsel Have Adequately Represented the Class.

There is no question that Class Representatives, Ingrid Tetreault, Debra Catlette, and Callie White, along with Plaintiffs' counsel, adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (citing *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008)).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiffs, Ingrid Tetreault, Debra Catlette, and Callie White, are adequate given that their interests are equivalent to those of the Settlement Class. They have been actively involved in this case. They participated in the drafting and reviewing of pleadings. Each of them responded to written discovery requests from Defendant and sat for their own deposition. Additionally, they participated in the settlement of this case by attending mediation. There is also no obvious conflict of interest between the Named Plaintiffs and the Settlement Class. They, along with

their counsel, secured a six-figure settlement from sophisticated and well-represented Defendants in favor of the Class Members they represent.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the attached declarations (Exhibits F, G, and H). When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2.    <u>The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator.</u>

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations and mediation between the Parties represented by experienced counsel. Indeed, the settlement was negotiated

at arm's length between Plaintiffs' counsel and counsel for Defendant as the continuation of discussions from an early mediation before a class-action mediator. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

The proposed settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length negotiations between the Parties and their counsel. The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations to avoid costly and protracted litigation. Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS, at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement ... counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

In sum, the attorneys who conducted the negotiations for the Settlement Class have many years of experience in conducting complex class action litigation

and were thoroughly conversant with the strengths and weaknesses of the case. The decision of Plaintiffs' counsel on settlement should be given great deference. This also weighs in favor of approval. *See Gevaerts v. TD Bank, N.A.,* No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *7 (S.D. Fla. Aug. 4, 2015) ("Plaintiffs' counsel was also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of similar class action cases Plaintiffs' counsel has brought in the past.")

### 3.    **The Settlement Provides Significant Relief to Class Members.**

As detailed above, the Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. The settlement requires Defendant to pay $362,500 into a Settlement Fund to resolve the claims at issue. The gross payment is approximately $833.33 per Settlement Class Member, with a net amount of about $544.06 per Settlement Class Member. This falls well within the range of reasonableness for settlement purposes in a WARN Act class action settlement.

For example, recently in a case styled *In re The Hertz Corporation, et al.*, Del. Bkt. Ct. Case No.: 20-11218-MFW (Doc. 5862), the United States Bankruptcy Court for the District Court of Delaware approved a WARN Act class action settlement for an amount per class member that was less than what is proposed here.   As a second example, in the *Benson v. Enterprise* matter, class members received $734.58 before taxes. *See also, Molina v. Ace Homecare LLC*, No. 8:16-

CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), report and recommendation adopted, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July 17, 2019)(approving class action settlement in which WARN Act class members receive $500 net payments). Thus, the recovery in this case of $833.33 falls well within the range of reasonableness for settlement purposes.

Notably, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. In determining whether a proposed settlement is fair, adequate, and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (citations and quotations omitted).

As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiffs being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendants. Likewise, summary judgment had not been briefed. Each of these phases of litigation presented serious risks, which the settlement allows Named Plaintiffs and the Settlement Class to avoid. *See, e.g., In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001).

The gross *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Settlement Agreement, the Settlement Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than the amount that might have been recovered through successful litigation. Likewise, Defendants cap their exposure at less than it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and

expense for all Parties. The Named Plaintiffs support the Settlement. Class Counsel believes that the bulk of the other Settlement Class Members will have a favorable reaction to the Settlement and not object once they have been advised of the settlement terms through the Court-approved Notices.

### 4.    The Proposal Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed settlement treats Class Members equitably. As set forth above, with the Settlement Class comprised of approximately 435 participants, each Settlement Class Member will receive a gross settlement payment of $833.33, with a net amount of about $544.06 per Settlement Class Member.  Importantly, this is a "claims paid" settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the settlement is deemed effective under the settlement agreement ("Settlement Effective Date" or "Effective Date"). If settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, American Red Cross.

If Plaintiffs had chosen to continue to litigate their claims, a successful outcome was far from guaranteed. As discussed below, Plaintiffs faced significant risks with respect to liability and damages. To avoid the foregoing risks, it was reasonable for Plaintiffs to settle the case at this juncture in order to assure class-wide monetary and prospective relief for Settlement Class Members. *See Bennett*

*v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5.    The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best) and might have resulted in no relief at all. Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay. Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into the settlement now, Plaintiffs  saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

## IV.    The Proposed Notice of Settlement Is Reasonable.

In addition to reviewing the substance of the parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all Settlement Class Members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual

notice to all potential class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here.

Under the Settlement, each Settlement Class Member will be sent a Short Form Notice of the proposed settlement via U.S. First-Class Mail in the form of a postcard, informing them of the terms of the settlement and their right to object to or opt-out of the settlement, subject to Court approval in its Preliminary Approval Order of both the Short Form and Long Form Notice. The content of the Long Form Notice is also reasonable and appropriate. Under Rule 23(c)(2)(B), notice must clearly and concisely state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notices of Settlement include all of this information. In addition, the Notices of Settlement clearly spell out the terms of the proposed Settlement. Accordingly, this Court should approve both the Short Form and the Long Form Notice of Settlement, as both the content of the notices and the methods of dissemination are reasonable.

## V.    <u>Class Certification Is Appropriate Under Rule 23(a) for Settlement Purposes</u>.

Besides approving the proposed settlement and the Notices of Settlement, this Court should also certify the proposed Settlement Class for settlement purposes under Fed. R. Civ. P. 23(a). "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks and citation omitted). Whether to certify a class action rests within the sound discretion of the district court. *Cooper v. Southern Co.,* 390 F.3d 695, 711 (11th Cir. 2004).

However, in the context of a settlement, class certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial."). Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League,* 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Horton v. Metropolitan Life Ins. Co.,* 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

### A.    <u>The Requirements of Rule 23(a) Are Met</u>.

Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Plaintiffs have satisfied all four requirements as set forth below.

### 1.    **Numerosity.**

Rule 23(a)(1) requires Plaintiffs to show that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable. Here, there are approximately 435 Settlement Class Members. Numerosity is satisfied. *See Williams v. Wells Fargo Bank, N.A.,* 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate").

### 2.    **Commonality.**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." In order to satisfy this requirement, there must be "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mowhawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks and citation omitted).   "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 673 (S.D. Fla. 2011) (internal brackets and quotations marks omitted).

As a result of Defendants' alleged violations of the WARN Act, Plaintiffs and each putative class member are entitled to assert a claim for wages and to recover damages for violation by Defendants of the WARN Act. All class members had the common experience of losing their jobs without sufficient advance notice as part of a mass layoff. Each class member was laid off terminated without cause, and without sufficient advance written notice, as part of the massive layoff and/or plant closure occurring on or about August 29, 2022, or within 30 days of that date. Because each class member suffered the same injury based on the same common core of salient facts, each class members' claim shares common legal and factual questions. These issues are "susceptible to class-wide proof." *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004).

In sum, the WARN Act issues central to this case—the timing of the layoffs, the required length of the notice period, and how much notice was practicable—all have common answers. Thus, commonality is met. *See, e.g., Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-CV-891-RBD-LRH, 2021 WL 2138781, at *4 (M.D. Fla. May 11, 2021).

### 3.    __Typicality.__

The Plaintiffs have shown their claims are typical of the other class members. In fact, they are identical. *See Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-CV-891-RBD-LRH, 2021 WL 2138781, at *6 (M.D. Fla. May 11, 2021) (finding typicality met in WARN Act case based on similar deficient notice claims). Rule 23(a)(3) requires that "the claims or defenses of the representative

parties are typical of the claims or defenses of the class."  "A class representative must possess the same interest and suffer the same injury as the class members to be typical under Rule 23(a)(3).

In this case, the legal theory underlying the claims of the putative class members is identical to the named Plaintiffs' claims.  Here, all claims are based on a nearly identical set of facts and are grounded in the same legal theories.  Plaintiffs are members of the proposed class.  Their claims have the same essential characteristics as the claims of the class at large.  Named Plaintiffs also asserts that they, like the other proposed class members, were not given sufficient notice of the termination and were not otherwise compensated.  All class members share these issues.

Aside from questions of quantum of damages, whether Plaintiffs and the other putative class members were covered by the WARN Act, and whether Defendants violated the WARN Act, are common to the class representative and each class member. Further, differences in class members' damages do not extinguish typicality. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  Thus, there is nothing to suggest the class representative's claims are somehow atypical of the class.  The issues of liability are common to the class, and typical of Plaintiffs' claims. Consequently, the typicality requirement of Rule 23(a)(3) has been met for the WARN Act Class.

### 4.  **Adequacy.**

The requirement of adequate representation addresses two issues: (1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the named plaintiffs have interests antagonistic to those of the rest of the class. *Williams,* 280 F.R.D. at 673. Here, Plaintiffs' counsel have extensive experience litigating class action cases, including COBRA notice cases. *See generally* Declarations of Luis A. Cabassa, Brandon J. Hill, and Amanda E. Heystek.

Moreover, "[t]here is nothing to indicate that [plaintiffs'] interests are in conflict with any members of the class." *Brand v. Nat'l Bank of Commerce,* 213 F.3d 636 (5th Cir. 2000). To the contrary, Plaintiffs "share common interests with the class members and seek the same type of relief[.]" *In re Checking Account Overdraft Litig.,* 275 F.R.D. at *7. Accordingly, the adequacy requirement is also met.

**B.    The Requirements of Rule 23(b)(3) Are Also Met.**

In addition to satisfying Rule 23(a), Plaintiffs must also satisfy Rule 23(b)(3). Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. As discussed below, the proposed Settlement Class in this case meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because common questions of law or fact between the Parties predominate over individual questions, and class action is the best available method for adjudicating this controversy.

**1.    Predominance.**

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (internal citations omitted). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

In the case at bar, the common legal theory of the WARN Act putative class Plaintiffs seeks to have certified is based on—as the proposed name for the class suggests—the WARN Act. Thus, each Class member's "underlying cause of action" is identical. Each Class Member is also entitled to the damages provided by statute. Indeed, courts have noted that "[t]he WARN Act contemplates enforcement by class action. *Butler-Jones v. Sterling Casino Lines, LP.*, 2008 WL 5274384, at *3 (M.D. Fla. Dec. 18, 2008); *see also Weeks- Walker*, 281 F.R.D. at 523, *citing Finnan v. LF Rothschild & Co., Inc.*, 726 F. Supp. 460, 465 (S.D. N.Y. 1989) ("The WARN Act seems particularly amendable to class litigation.").

Minor differences do not stand in the way of Plaintiffs satisfying predominance. As the *Enterprise* Court explained in certifying a nationwide class involving forty different Enterprise locations, "...[w]hile this element will present some individualized questions, they will have limited effect on the scope of the

class action." *Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-CV-891-RBD-LRH, 2021 WL 2138781, at *9 (M.D. Fla. May 11, 2021).

The same factors establish predominance here. Litigation of this case will focus primarily on whether Defendants provided sufficient notice to terminated employees, and whether Defendants' mass layoff and consolidation, including the transfer offers to affected employees, were made prior to the closing of ShorePoint Venice. Here, as in *Benson*, there is no evidence or indication that potential class members were treated uniquely with respect to any of these issues. Each class member was treated in the same or similar manner pursuant to a common plan implemented by Defendants. Thus, predominance is satisfied.

### 2. <u>Superiority</u>.

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Superiority is met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for individual members of the Settlement Class in this case and the fact that there are

common issues shared by the Settlement Class Members, the individual interest in controlling the case through separate actions is relatively low.

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 679 (S.D. Fla. 2011). Thus, superiority is satisfied.

## VI.    __CONCLUSION__.

For the foregoing reasons, Named Plaintiffs Ingrid Tetreault, Debra Catlette, and Callie White respectfully ask the Court enter the attached proposed Preliminary Approval Order (*see* Exhibit A).

### __CERTIFICATE OF GOOD FAITH__

Plaintiffs' counsel certifies that, in conformance with Local Rule 3.01(g), he conferred with Defendants' counsel about the issues raised in Plaintiffs' Motion. Defendants do not oppose the relief requested herein.

DATED this 8th day of April, 2024.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
**LUIS A. CABASSA**
Florida Bar Number: 053643
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: aheystek@wfclaw.com
***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 8th day of April, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**

26