UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INGRID TETREAULT,
DEBRA CATLETTE, and CALLIE WHITE,
on behalf of themselves and on behalf of
all others similarly-situated,

      Plaintiffs,

v.                       CASE NO.: 8:22-cv-1989-CEH-AEP

VENICE HMA, LLC, d/b/a SHOREPOINT
HEALTH VENICE, and VENICE HMA
HOLDINGS, LLC,

      Defendants.

_____/

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF THE PARTIES' CLASS ACTION SETTLEMENT**

The Class Representatives, Ingrid Tetreault, Debra Catlette, and Callie White (collectively "Plaintiffs"), in accordance with Fed.R.Civ.P. 23, file this Unopposed Motion seeking Final Approval of the Parties' Class Action Settlement. In further support thereof, Plaintiffs respectfully submit the following:

***Brief Summary***

On June 10, 2024, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of the Class-wide Settlement of the claims asserted against Defendants under the Worker Adjustment and Retraining Notification Act ("WARN Act"). (*See* Doc. 83). After preliminary approval was granted, notice was mailed to class members in accordance with the Court's Preliminary Approval

Order.  The reaction has been overwhelmingly positive.  In fact, out of 441 notices sent, only two objectors have jointly filed a single objection. A husband and wife, who were both formerly employed by Defendants, filed their objection primarily in regards to the gross amount payable to each Class Member and the lack of payout for accrued vacation subsequent to the termination. (Doc. 89). However, the amount payable to each Class Member is in line with other WARN Act class settlements in this district and Plaintiffs could not have recovered their accrued vacation pay under the WARN Act.  Furthermore, vacation payout is not contemplated by the WARN Act's provisions. Additionally, only one Class Member opted out.  Thus, the remaining 438 Class Members have had a positive reaction to the settlement. As a result, Plaintiffs respectfully ask that this Honorable Court grant final approval of the Parties' class action settlement.

In terms of specifics, if approved by the Court, the settlement provides for immediate relief to approximately 438 members of the proposed settlement class ("Settlement Class Members" or "Class Members"). Defendants have agreed to create a common fund of $362,500 for the Class Members. Settlement Class Members will not be required to take any action to receive a check, making it a "claims paid" settlement. The gross payment is approximately $821 per Settlement Class Member, with a net amount of about $543 per Settlement Class Member,[1] an amount consistent with similar WARN Act class action settlements approved by

---

[1] $362,500 − $120,821.25 (attorneys' fees) - $3,542.00 (WFC litigation costs) = $238,136.75 / 438 class members= $543.69 net payments to class members.

federal courts, including here in the Middle District of Florida.[2] Not only that—no settlement funds revert to Defendants.

In sum, little has changed since the Court's Order granting the Plaintiffs' Motions for preliminary approval of the same settlement (with the exception of the inclusion of six additional putative class members), confirming that the settlement is fair, reasonable, adequate, and warrants final approval. After notice of the Settlement terms, the Settlement Class Members showed widespread support for that Agreement and nobody has objected to its terms. As a result, Plaintiffs request that the Court enter the Final Approval Order attached as Exhibit A. In further support of this Motion, Plaintiffs respectfully submit the following:

## I.    **BACKGROUND ON THE LITIGATION.**

### A.    **The Claims and Case Background.**

The original complaint in this lawsuit was filed on August 29, 2022. Plaintiffs' Complaint alleged that Defendants violated the WARN Act by terminating the Named Plaintiffs with no advance notice in violation of the WARN Act. Defendants have, at all relevant times, denied Plaintiffs' allegations and affirmatively asserted its compliance with the law.

Following the completion of: (i) an early arms-length in-person mediation

---

[2] *See, e.g., Benson v. Enterprise Leasing Company of Orlando, LLC* case, M.D. Fla. Case No.: 6:20-cv-891 (Sept. 20, 2022, Doc. 149) (approving class action settlement where WARN Act class members received $734.58); *Molina v. Ace Homecare LLC*, No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), report and recommendation adopted, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July 17, 2019)(approving class action settlement in which WARN Act class members received $500 net payments)

before third party mediator, Marquis Heilig, during which both sides were represented by experienced class counsel, resulting in an impasse; (ii) briefing on a potentially dispositive Motion to Dismiss filed by the Defendants that was denied; (iii) extensive discovery during which over 2,000 pages of documents were exchanged and half a dozen depositions completed; (iv) and arms-length settlement negotiations over a period of seven months between both sides' experienced class counsel, the Parties reached a resolution to this action.

**B.  Defendants' Defenses.**

Had negotiations been unsuccessful, Defendants had available to them a myriad of defenses to Plaintiffs' allegations, including defenses to the merits of the case and defenses to damages. Defendants have raised various defenses in this action, including that the closing of ShorePoint Venice was part of a consolidation of employees and certain business lines with ShorePoint Punta Gorda and ShorePoint Port Charlotte, and that the putative class members received bona fide transfer offers prior to the closing of ShorePoint Venice and thereafter in accordance with WARN. Defendants further assert that the requisite number of employees did not suffer an "employment loss," as that term is defined under the WARN Act, such that Defendants were required to comply with the WARN Act's notice requirements.

As part of the Settlement Agreement, Defendants specifically deny that they engaged in any wrongdoing, do not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been

alleged against them in the action, deny that the claims asserted by Named Plaintiffs are suitable for class treatment other than for settlement purposes, and deny that they have any liability whatsoever. However, Defendants agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to their business operations.

## II.    THE PROPOSED SETTLEMENT.

### A.    The Proposed Settlement Class.

The Settlement Agreement defines the proposed Settlement Class as follows:

> All persons employed by Defendants who worked at ShorePoint Health Venice, who were laid off or terminated without cause on their part on or about August 29, 2022 or within 30 days of that date, as part of, or as the reasonably expected consequence of, a mass layoff and/or plant closure as defined by the WARN Act, who do not timely opt-out of the class, but excluding individuals who were PRN employees or were employed at the nearby ShorePoint Health Venice HealthPark.

According to Defendants' records, the class is comprised of approximately 441 people. Importantly, these are the same individuals from the class previously certified by the Court at Doc. 83. Thus, no class members will be left out.

### B.    Benefits to the Settlement Class.

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiffs and all Settlement Class Members in exchange for the Defendants' agreement to pay $362,500 to a settlement fund ("Settlement Fund"). Each Class Member is entitled to a gross pro-rata portion of the Settlement Fund totaling

$821.  After deducting the estimated attorneys' fees and litigation costs, the cost for settlement administration, each of the Settlement Class Members is entitled to receive a net payment of approximately $543.  All Class Members will automatically receive a check without having to take any action whatsoever, making this a "claims paid" settlement. Importantly, no funds will revert to Defendants. Any remaining funds will be paid to *cy pres* recipient American Red Cross, subject to Court approval.

The Parties did not negotiate attorneys' fees until after all terms related to the size of the common Settlement Fund and the class definitions were agreed upon. Neither settlement approval nor the size of the Settlement Fund are contingent upon the full amount of any requested fees being approved, nor the general release payment being approved.

### C.    **Class Action Fairness Act Notice.**

The Settlement Administrator caused notice of the proposed settlement to be served upon the appropriate federal and state officials, as required by the Class Action Fairness Act of 2005 ("CAFA"), in substantially the form of the CAFA notices attached as Exhibit E to the Settlement Agreement.

### D.    **The Court's Order granting Preliminary Approval of the Settlement.**

On June 10, 2024, the Court entered its Order granting preliminary approval of the Parties' class action settlement. (*See* Doc. 83). In that Order, the Court determined that the Parties' settlement terms are "fair, reasonable, and adequate."

(*Id.*, p. 6, ¶ 17). Following entry of that Order, and as further explained by the attached sworn declaration from the Settlement Administrator, Notice was mailed out to the Settlement Class Members.

### E.    Notice And Administration.

Defendants acted as the Settlement Class Administrator and were charged with notifying the Settlement Class of the settlement and providing settlement administration services. This allowed for a greater distribution of the Settlement Fund to the class members themselves, rather than reducing the Settlement Fund for payment of administration services.

On August 23, 2024, the Defendants mailed the Court approved Class Notice and Claim Form by first class-regular U.S. Mail to 441 class members. (Declaration of Angela Boyle, ¶¶ 3, 4). One additional notice was sent after Defendants learned of the existence of one additional qualifying class member. *Id.* Defendants made extensive efforts to ensure notice reached the maximum number of class members possible, including multiple re-mailings after address searches. (Declaration of Angela Boyle, ¶¶ 5, 6).

The Notices informed Settlement Class members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court; and (6) that the Court retains the right to reschedule the final fairness hearing without further notice.

7

The Class Notices also directed recipients to a toll-free number that provided additional information, and allowed class members to contact Defendants with any questions or to update their addresses.  These extensive efforts to provide notice to the Settlement Class are "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

        **F.**      **Class Members Overwhelmingly Support the Settlement.**

Members of the Settlement Class support the Settlement. Thus far, out of the 441 Class Members there has only been one objection and one request for exclusion. (Declaration of Angela Boyle, ¶¶ 8, 9, Exhibits B & C). The fact that there was only one objection jointly filed by two objectors that are husband and wife regarding the gross amount for each Class Member and the lack of payout for accrued vacation reflects an overwhelmingly positive reaction to the Settlement by the class members.  *See e.g. Bennett,* 737 F.2d at 988 & n. 10 (holding that the district court properly considered the number and substance of objections in approving a class settlement); and *Rodriguez v. Mears Destination Services, Inc.*, 617CV1113ORL40DCI, 2018 WL 8061811, at *1 (M.D. Fla. Sept. 4, 2018)(finding the limited opposition manifests the Class' overwhelming acceptance of the Settlement Agreement). Thus, this indicates an overwhelming positive reaction.

**III.**    **MEMORANDUM OF LAW.**

        **A.**      **Legal Standard for Final Approval.**

It is well established that settlements are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts

and preventing lawsuits." *Miller v. Rep. Nat'l. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977). A district court, in reviewing a proposed settlement of a class action case must find that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable." *See id.* at 428; *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); Rule 23(e)(2).

The Eleventh Circuit has previously outlined several factors that a court must consider in its determination of whether a proposed class-action settlement is fair, adequate, and reasonable: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett*, 737 F.2d at 986. In weighing these factors, the Court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," Courts are often "hesitant to substitute their own judgment for that of counsel." *See Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

In addition, effective December 1, 2018, Rule 23 itself was amended to include certain final approval criteria for courts to consider, including whether: (A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and, finally, (D) the proposal treats class members equitably relative to each other.  *See* Fed. R. Civ. P. 23(e)(2).  For the reasons discussed below, the application of the recently amended Rule 23(e) factors, as well as the analogous *Bennett* factors, unquestionably demonstrate that the Parties' proposed settlement is fair, adequate, and reasonable under the circumstances of this case.

### B.    **The Class Has Already Been Certified on a Preliminary Basis**.

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (Doc. 83).  Since the Court's Preliminary Approval Order, one objection - filed jointly by two former employees that are husband and wife, was filed and centered on the overall amount payable to each Class Member and the lack of payout for accrued vacation - was received. However, as discussed more fully below, the Settlement Agreement includes an amount payable to the Class Members that is in line with other WARN Act class settlements in this district. And the limited number of objections is indicative of the overwhelming support of the Settlement Agreement by the remaining Class Members. Similarly, only a single Class Member opted out.  Thus, there is no reason to re-visit the Court's prior ruling on these issues.  Pursuant to Fed.R.Civ.P. 23(e), the Court should grant final approval of the settlement.

### C.    **Notice to the Class under Fed.R.Civ.P. 23(e)(1).**

Under Fed.R.Civ.P. 23(e), Courts typically first analyze the notice to the class.  *See* Fed.R.Civ.P. 23(e)(1).  As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort."  An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

Here, the Settlement Administrator, Human Resources Project Director for CHSPSC, LLC, exceeded these requirements by sending out the Court-approved short form and long form versions of the notice to all class members via U.S. Mail. That notice included all information required by Fed.R.Civ.P. 23(e)(1) and 23(c)(2)(B), including a dedicated informational number, along with all of the other required information previously approved by the Court. (Declaration of Angela Boyle, ¶¶ 4-7) Thus, notice was sufficient.  *See also Petersen v. Am. Gen. Life Ins. Co.*, No. 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *4 (M.D. Fla. Oct. 22, 2019).

### D.    <u>Final Approval is Appropriate Under Fed.R.Civ.P. 23(e)(2)</u>.

Next, as set forth above, under Rule 23(e)(2), Courts address whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class

is adequate, and (4) the proposal treats class members equitably relative to each other.  This standard is satisfied here, and the Court should enter a Final Order approving the Class Action Settlement Agreement.

### 1.    The Class Representative and Class Counsel Have Adequately Represented the Class.

There is no question that the Class Representatives and the undersigned have adequately represented the class.  This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives have adequately prosecuted the action.  *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiffs, Ingrid Tetrault, Debra Catlette, and Callie White, are adequate given that their interests are equivalent to those of the Settlement Class. They have been actively involved in this case. They participated in the drafting and reviewing of pleadings. They responded to written discovery requests from Defendants and sat for a deposition. Additionally, they participated in the settlement of this case by attending mediation. There is also no obvious conflict of interest between the Named Plaintiffs and the Settlement Class. They, along with their counsel, secured a six-figure settlement from sophisticated and well-represented Defendants in favor of the Class Members they represent.

The Court has appointed as Class Counsel Luis A. Cabassa, Brandon J. Hill, and Amanda E. Heystek from Wenzel Fenton Cabassa, P.A.  (*See* Doc. 83, p. 3). Those attorneys should remain class counsel.  The proposed attorneys have extensive class action experience, as detailed in the previously filed declarations by class counsel.

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference.  *See, e.g., Hugo on behalf of BankAtlantic Bancorp, Inc. v. Levan,* No. 08-61018-CIV, 2011 WL 13173025, at *10 (S.D. Fla. July 12, 2011)("The view of the attorneys actively conducting the litigation regarding the appropriateness of a proposed settlement is "entitled to significant weight"); *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 635 (6th Cir. 2007) ("In deciding whether the settlement is fair, reasonable, and adequate, the Court must look to the opinions of class counsel and class representatives.").  Simply put, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

## 2. <u>The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before A Neutral Mediator</u>.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was

the product of extensive and detailed, arm's-length, and at times contentious, negotiations between the Parties and their counsel.

Not only that, the Parties used a highly respected mediator in this case, Marquis Heilig, one of the most respected mediators in Florida, whose involvement also supports finding the Settlement fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2)(B), Committee Notes on Rules–2018 Amendment ("[T]he involvement of a neutral or court- affiliated mediator ... may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"); *accord Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator").  The Parties and counsel were well-informed of the potential strengths (and weaknesses) of their positions, and conducted good-faith negotiations in an effort to avoid costly and protracted litigation.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val v. Buccaneers Ltd. P'ship,* No. 8:14-cv-01182-CEH, 2015 WL 3776918, at *2 (M.D. Fla. June 17, 2015) ("[C]ourts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks").  Where there "is no

evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement ... counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3.    The Settlement Provides Adequate Relief to the Class Members.

As detailed above, the Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. The settlement requires Defendants to pay $362,500 into a Settlement Fund to resolve the claims at issue. The gross payment is approximately $821 per Settlement Class Member, with a net amount of about $543 per Settlement Class Member. This falls well within the range of reasonableness for settlement purposes in a WARN Act class action settlement. [*See, e.g., Molina v. Ace Homecare LLC,* No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), *report and recommendation adopted*, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July 17, 2019)(approving class action settlement in which WARN Act class members received $500 net payments); *see also Philips v. Munchery Inc.,* No. 19-CV-00469-JSC, 2021 WL 326924, at *2 (N.D. Cal. Feb. 1, 2021) (approving class action settlement in which WARN Act class members received $831 net payments). Accordingly, the negotiated relief in this case is more than adequate, and should be approved.] For example, recently in a case styled *In re The Hertz Corporation, et*

*al.*, Del. Bkt. Ct. Case No.: 20-11218-MFW (Doc. 5862), the United States Bankruptcy Court for the District Court of Delaware approved a WARN Act class action settlement for an amount per class member that was less than what is proposed here.  As a second example, in the *Benson v. Enterprise* matter, class members received $734.58 before taxes. *See also, Molina v. Ace Homecare LLC*, No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), report and recommendation adopted, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July 17, 2019)(approving class action settlement in which WARN Act class members received $500 net payments). Thus, the recovery in this case of $543 falls well within the range of reasonableness for settlement purposes.

Similar to this case, the *Hertz* and *Benson* WARN Act matters also revolved around mass layoffs engaged in by rental car companies around the time COVID-19 began. Also, as in *Hertz* and *Benson,* two of Defendants' defenses in this litigation involved the natural disaster exception and the unforeseeable business circumstance defense to the WARN Act's notice provision.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive, and likely would have led to an appeal. The risk of the Named Plaintiffs being unable to establish liability was also present because of numerous defenses asserted by Defendants, which may have resolved the case on summary judgment or trial.  Each of these remaining phases of the litigation posed serious risks, which the Settlement allows Named Plaintiffs and the Settlement

Class to avoid.  *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

In sum, the *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases.  Under the Parties' Settlement Agreement, the Class Members can quickly realize a portion of their possible damage claims from the Settlement Fund, even if the amount is less than what could have been recovered through successful litigation.  Likewise, Defendants limit their exposure to less than the minimum it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation.  The Named Plaintiffs also support the Settlement, as do the Class Members— evidenced by the limited number of objections – only one.

### 4.    The Proposal Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably.  In fact, they are treated identically, which also cuts in favor of final approval of the Parties' class action settlement.

### 5.    The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all.  Moreover, Defendants likely would have appealed any judgment entered against them,

resulting in further expense and delay.  Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992).  By entering into the Settlement now, Plaintiffs saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.  Thus, the remaining *Bennett* factors are satisfied here.

## E. **The Remaining Factors Under Fed.R.Civ.P. 23(e)(3)-(5) are Satisfied**.

In accordance with Fed.R.Civ.P. 23(e)(3), the parties have filed at Doc. 118-2, the Settlement Agreement for which they seek final approval.  Similarly, Fed.R.Civ.P. 23(e)(4) is satisfied by the 60-day notice period during which class members were given sufficient time to be excluded and/or object.

And, finally, Fed.R.Civ.P. 23(e)(5), which sets out the applicable procedures for evaluating objections, is also satisfied here because, in fact, to date there has only been one objection to the Settlement Agreement. (Doc. 89). Lawrence Brady and Barbara Hyland objected to the settlement primarily because they believe the gross amount provided to the class members is inadequate when compared with their full 60 days of pay – the remedy afforded under the WARN Act if a plaintiff succeeds in all respects on his claim. Mr. Brady and Mrs. Hyland advocate that they should be  paid in full for the sixty days  permitted by the WARN Act as relief.

Further, the objection advocates that the employees' accrued vacation time should have been paid out, however, this is not a remedy provided by the WARN Act.

The objection filed by Mr. Brady and Mrs. Hyland advocates for the full remedy of 60 days' pay under the WARN Act. However, as stated above, the Plaintiffs' WARN Act claim faced an uphill battle and was not guaranteed to be successful. Defendants raised various defenses in this action, including that the closing of ShorePoint Venice was part of a consolidation of employees and certain business lines with ShorePoint Punta Gorda and ShorePoint Port Charlotte, and that the putative class members received bona fide transfer offers prior to the closing of ShorePoint Vencie and thereafter in accordance with WARN. Defendants further assert that the requisite number of employees did not suffer an "employment loss," as that term is defined under the WARN Act, such that Defendants were required to comply with the WARN Act's notice requirements.

Counsel for the Plaintiffs and the putative class engaged in significant discovery regarding the Defendants' defenses, including seven depositions of Defendants' executive and management team. If the Defendants succeeded in their argument, the Plaintiffs would recover nothing. In fact, when ruling on the Motion to Dismiss, this Court pointed to the Defendants' CEO's email which notified employees of the hospital closure and purportedly advised that "the majority" of employees could be transferred to other positions. As this Court ruled, "[t]he email language could support either party's interpretation." (Doc. 45, p. 12). Furthermore, nearly every putative class member *was* offered a transfer within the

19

ShorePoint system. Thus, losing at the summary judgment phase, or even at trial, was an actual risk for the Plaintiffs and the class. Plaintiffs' counsel appropriately accounted for that risk in its settlement discussions. In contrast, the Settlement Agreement provides the certainty of recovery for the entire class. *Poertner v. Gillette Company, et al*, No. 6:12-cv-803-Orl-31DAB, 2014 WL 4162771, at *4 (M.D. Fla. Aug. 21, 2014)("The Settlement eliminates a substantial risk that the Class would end-up empty-handed.")

Furthermore, the Settlement Agreement establishes an amount to be paid to the class members that is in line with other WARN Act settlements in this region. *See, e.g., Benson v. Enterprise Leasing Company of Orlando, LLC* case, M.D. Fla. Case No.: 6:20-cv-891 (Sept. 20, 2022, Doc. 149) (WARN Act class members received $734.58); *Molina v. Ace Homecare LLC*, No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), report and recommendation adopted, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July 17, 2019)( WARN Act class members received $500 net payments). Thus, the single objection should be overruled. This limited objection and its substance should not preclude the certainty of recovery for the other 439 Class Members that overwhelmingly support the Settlement Agreement. *See e.g. Bennett,* 737 F.2d at 988 & n. 10 (holding that the district court properly considered the number and substance of objections in approving a class settlement).

Thus, each of these factors also weighs in favor of the Court granting final approval of the Parties' class action settlement.

20

## IV.    <u>CONCLUSION</u>.

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion.  A proposed Order is attached as Exhibit A.

### <u>CERTIFICATE OF GOOD FAITH</u>.

In good faith, Plaintiffs' counsel certifies that in conformance with Local Rule 3.01(g), he conferred with Defendants' counsel about the issues raised in Plaintiffs' Motion. Defendants do <u>not</u> oppose the relief requested herein.

Dated this 16th day of October, 2024.

Respectfully submitted,

*/s/Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
**LUIS A. CABASSA**
Florida Bar Number: 053643
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: aheystek@wfclaw.com

***Counsel for Plaintiffs and the Class***

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 16th day of October, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

*/s/Brandon J. Hill*
**BRANDON J. HILL**